James Edgar **MOTTO**

v.

**The UNITED STATES.**

**No. 43–64.**

United States Court of Claims.

July 16, 1965.

David Machanic, Washington, D. C., for plaintiff. Pierson, Ball & Dowd, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This case is before us on cross motions for summary judgment. It involves a claim by plaintiff for active duty pay

and allowances allegedly due him between the period of July 11, 1958 to present, or in the alternative, from July 11, 1958, to August 17, 1963. Plaintiff also requests sums due for readjustment pay as computed under 10 U.S.C. § 687 (1958 ed. Supp. V).

Plaintiff, who had been serving on active duty in the United States Army since March 3, 1941, was arraigned along with two other military defendants on June 6, 1958, in a United States District Court on a charge of violation of 18 U.S.C. § 202 (1958 ed.), a Federal bribery statute. At the time of his arraignment, plaintiff had the rank of captain. Plaintiff waived counsel and entered a plea of guilty. On July 11, 1958, plaintiff was sentenced to a period of three years' probation and a $500 fine was assessed against him. Thereafter, on September 8, 1958 plaintiff was notified by Army authorities that he had ceased to be an officer of the United States Army as of July 11, 1958 by operation of law, 18 U.S.C. § 202 (1958 ed.)[1]

The trial by civil authorities of certain civilians who were involved in the matter for which plaintiff had been found guilty took place on March 17, 1961. After presentation of the Government case, the court dismissed the indictment against the civilians and subsequently set aside the information, guilty plea and sentence entered against plaintiff. The order vacating the information, guilty plea and sentencing read as follows:

"The Court having determined that no valid military regulations were violated in connection with the sale and solicitation of life insurance to recruits at Fort Leonard Wood, Missouri, during the months of April and May 1957, finds that as a result of such lack of regulations, defendants herein pleaded guilty to an illegal charge and under the provisions of Rule 35, Federal Rules of Criminal Procedure, were illegally sentenced for a violation of § 202, Title 18, United States Code.

"It is therefore, adjudged and decreed that the sentence of the Court imposed on James Edgar Motto, James L. Hamlin and Erland Vernon Western on July 11, 1958, be rescinded and set aside; that the pleas of guilty entered by each of these defendants on July 6, 1958, be withdrawn; and that the information of three counts filed against these defendants be dismissed."

On August 14, 1961 plaintiff filed an application for correction of military records and claim for back pay with the Army Board for Correction of Military Records. This application sought the reinstatement of plaintiff in the United States Army, or in the alternative, a change of his original dismissal into an honorable discharge as of the date of the change. The request for back pay and allowances covered the period from the date of dismissal from the service to date of decision by the Board. Plaintiff based his application to the Board on the theory that the order of the District Court withdrawing his guilty plea and vacating his sentence rendered his conviction under 18 U.S.C. § 202 void, *ab initio*, and therefore no grounds existed for his dismissal under the statute.

On August 17, 1963, two years after he had submitted his application for correction of his records, plaintiff received a notice of final disposition of his case from the Under Secretary of the Army which read as follows:

"Having considered the findings, conclusions and recommendations of the Army Board for Correction of Military Records, and under the provisions of 10 U.S.C. 1552, it is directed that all the Department of Army records of JAMES E. MOTTO be corrected to show:

"1. That the termination of his commissions and of his status in the

---

1. 18 U.S.C. § 202, the statute which plaintiff pleaded guilty of violating, specifically provided for forfeiture of office upon violation thereof.

active military service on 11 July 1958 were, and are, null and void and of no force or effect.

"2. That he remained in the active military service until 8 September 1958.

"3. That he was honorably relieved from active duty on 8 September 1958 and transferred to the United States Army Reserve."

Plaintiff subsequently received a claim certificate from the Army in the sum of $1,017.61 for active duty pay and allowances for the period July 11, 1958, to September 8, 1958, which sum he refused to accept because of the pending litigation in this case. No allowance for readjustment pay was included in the claim certificate.

The legal argument that plaintiff proffers to this court for our consideration in his claim for back pay and allowances may be summarized as follows:

"(1) The August 17, 1963, order of the Secretary of the Army specifically stated that the termination of plaintiff's commission and status on July 11, 1958, was null and void.

"(2) Plaintiff was therefore never legally separated from the Army on July 11, 1958.

"(3) The act of the Secretary of the Army in back-dating plaintiff's release from active duty to September 8, 1958, was arbitrary and capricious, as the September 8 date is a completely unrelated date.

"(4) Plaintiff was therefore neither separated from the service on July 11, 1958, nor on September 8,

1958, and is entitled to back pay to the date of his actual release."

We are in agreement with plaintiff's argument. The August 17, 1963 decision of the Secretary of the Army rendered plaintiff's earlier discharge *null and void.* Plaintiff's release from service had been set aside completely. The effect of the decision meant that plaintiff had remained in the service after July 11, 1958.[2] It therefore follows that plaintiff is entitled to pay for the period subsequent to July 11, 1958 until the date of his actual dismissal.[3]

Defendant contends the date of actual dismissal was September 8, 1958, the date shown on plaintiff's records as a result of the action by the Under Secretary of the Army, and that plaintiff is entitled to pay only until that date. As will be remembered, September 8, 1958 was the date on or about which plaintiff was notified that he had ceased to be an officer. This is the only relationship between that date and any event transpiring in this case. We regard as anomalous the fact that the Under Secretary nullified the dismissal of July 11, 1958 due to the rescission of plaintiff's guilty plea and sentence, while at the same time he determined a new dismissal effective as of the date plaintiff was notified of the prior null and void dismissal. Such action by the Under Secretary can only be deemed arbitrary and capricious. When the Under Secretary rescinded the termination of plaintiff's commission, plaintiff was uncategorically restored to active duty. The Under Secretary could not thereafter arbitrarily choose a date (September 8, 1958) and

---

2. The case at hand is readily distinguished from the facts of Smith v. United States, 170 F.Supp. 639, 145 Ct.Cl. 104 (1959). Plaintiff was denied recovery of back pay in Smith. However, in Smith, the original discharge was never set aside (as was the discharge here); instead, the Judge Advocate General merely changed the character of it from dishonorable to honorable, and the honorable discharge was therefore made effective to same date as the dishonorable one.

3. In analogous, though not identical situations, this court has frequently awarded back pay for illegally effectuated discharges. Shapiro v. United States, 69 F. Supp. 205, 107 Ct.Cl. 650 (1947); Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957); Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958); Clackum v. United States, 296 F.2d 226, 148 Ct.Cl. 404 (1960).

redismiss plaintiff for no good reason or cause. In attempting to act in this manner, the Under Secretary clearly abused his discretion and acted contrary to law. We therefore hold that September 8, 1958 was not the date of plaintiff's dismissal, and that plaintiff is entitled to back pay subsequent to that date.

Defendant vigorously opposes any recovery by plaintiff subsequent to September 8, 1958. The basis of this opposition is the opinion by this court in McMullen v. United States, 100 Ct.Cl. 323 (1943), cert. denied 321 U.S. 790, 64 S.Ct. 786, 88 L.Ed. 1080 (1944). Plaintiff in McMullen was a regular Army officer who had been found incapacitated for active duty by a Retiring Board. When the question of his retirement for disability was under consideration, he was indicted in Federal courts, found guilty and sentenced on May 8, 1936. On May 28, 1936, the War Department issued an order announcing that plaintiff had ceased to be an officer as of May 8, 1936. On appeal, the conviction was reversed; the case remanded, and subsequently prosecution was abandoned.

McMullen brought suit in this court for back pay, asserting that the reversal of the conviction and the subsequent *nolle prosequi* acted to revert his status to what it would have been had he never been convicted; that his separation from the service was not permanent, but had been affected by the reversal of conviction.

The court held that McMullen was by the judgment of guilt immediately and permanently removed from office. The subsequent reversal did not affect plaintiff's removal from office; the policy of the disqualifying statute required immediate permanent removal of the officer from his office.

We believe the facts in McMullen are inapposite to the present case. In Mc-

Mullen, there was no ruling by the Secretary of the Army or any other authority that the termination of plaintiff's commission was null and void and of no force or effect. In the case at hand, the Secretary of the Army has so ruled.[4] The issue as to whether plaintiff's original dismissal from the Army was valid or effective is no longer in contention as it was in McMullen. We have here the specific ruling that plaintiff's dismissal was null and void. The problem before us is the determination of the date of dismissal.

Plaintiff, relying on Roberts v. Vance, 343 F.2d 236, (D.C.Cir. 1964) urges us to conclude that there was never a valid dismissal and that plaintiff is therefore entitled to back pay to the date of judgment. Roberts v. Vance, supra, was heard by the United States Court of Appeals for the District of Columbia on appeal by plaintiff from the District Court decision that denied plaintiff's summary judgment motion that sought a declaratory judgment and injunctive relief, and granted defendant's motion for summary judgment. Plaintiff in Roberts v. Vance, supra, sought to have his release from active duty set aside. He had served actively for 18 years and 9 months, and was dismissed without a hearing for delivering an unauthorized speech. The Court of Appeals reversed the District Court and set aside plaintiff's dismissal on the grounds that the pertinent Army Regulation (AR 135–173) had not been complied with. That regulation provides that in order to release a reserve officer from active duty on grounds other than maximum age or period of service, failure of promotion, etc., the Secretary of the Army must observe a two-step procedure: (a) screening by Headquarters; (b) Active Duty Board Review. In addition, an officer with more than 18 years' service (plaintiff Roberts) could only be released

4. Defendant has attempted to gloss over this distinction by stating that the setting aside of the termination did not void the termination, but only changed its character. We reject this argument, however, as the clear language of the Under Secretary's decision states that the termination was "null and void and of no force or effect."

by final approval of the Secretary of the Army. Plaintiff Roberts was only afforded the decision by the Secretary of the Army. The Court of Appeals held that plaintiff was entitled to all three procedural safeguards and that, therefore, the dismissal was invalid.

Special emphasis was placed by the court upon the fact that plaintiff was an 18-year plus active reservist. Much of the opinion was devoted to the Army policy regarding 18-year reservists and to the special legislative safeguards granted to those active duty officers who had served more than 18, but less than 20 years. The opinion spoke of a definite Congressional intent that those within two years of becoming eligible for retirement should not be separated except for very good cause. The court therefore looked with great scrutiny upon the procedures afforded plaintiff, and held that they must be strictly adhered to.

■ There is no sharply defined public or Congressional policy enhancing plaintiff's rights in the present case. Plaintiff Motto does not fall within that special category of officers who have served more than 18 years. While it is true that the Secretary was obliged to follow his own regulations, Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), this court will not scrutinize to the barest minutiae the steps taken by the Secretary in this case, as was done in Roberts, supra, absent the aforementioned sharply defined policy.

■ There is, however, a more compelling reason for us not to follow Roberts. Here plaintiff, on August 17, 1963, the date of action by the Under Secretary, had for all practical purposes been out of the service, although admittedly not of his own volition, for five years. A screening of plaintiff's records by Department of Army headquarters, and then by the Active Duty Board, would have been a futile gesture, for there was no way to tell how plaintiff's efficiency and manner of performance had been affected by his five-year forced absence. Plaintiff's record for practical purposes was non-existent for a five-year period. Headquarters and the Board would have had no record to measure within the annually prescribed guidance and criteria. It was thus proper for the Under Secretary to make an *ad hoc* determination of plaintiff's status, and legally allowable for him to by-pass the usual procedures.[5]

In the past, this court has held that plaintiffs, whose original discharges were invalidated, could not be legally discharged until the date of action correcting the illegal or wrongful discharges. Cf. Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957); John J. Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958). We feel disposed to follow that rule in this case. Plaintiff Motto could not have been legally discharged at least until the decision of the Under Secretary. We therefore hold that plaintiff is entitled to back pay from the date of his illegal discharge on July 11, 1958, until his service was legally terminated on August 17, 1963. In addition to the active duty pay, plaintiff is also entitled to readjustment pay.

Therefore, plaintiff's motion for summary judgment is granted and defendant's cross motion is denied. Judgment is entered for plaintiff with the amount of recovery to be determined in accordance with Rule 47(c).

---

5. AR 135–173, the regulation applied in Roberts v. Vance, supra, and invoked by plaintiff in this case, provided that "exceptions to these regulations may be authorized on an individual basis by Headquarters, Department of the Army."