Alexander G. MONTIEL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–258C.

United States Court of Federal Claims.

Jan. 6, 1998.

Stephen V. Petix, San Diego, CA, for plaintiff.

Laureen Kapin, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen and Assistant Director James M. Kinsella, for defendant. LTCOL David A. Anderson, Office of the Judge Advocate General, of counsel.

## OPINION

LYDON, Senior Judge.

This military pay case is before the court on defendant's motion to dismiss, pursuant to RCFC 12(b)(4), for failure to state a claim upon which relief can be granted, and plaintiff's motion for leave to amend his complaint. Plaintiff seeks to recover monies offset by defendant against his award of back pay and allowances. Oral argument was heard on December 8, 1997. For the reasons set forth below, the court grants defendant's motion to dismiss, and denies plaintiff's motion for leave to amend the complaint.

## FACTS

On May 11, 1988, plaintiff, Alexander G. Montiel, was discharged from the United States Navy (Navy) after serving approximately thirteen years and nine months of active naval service. At the time of his discharge, plaintiff was serving as a messman, or cook, on a naval air station in Washington State, and had attained the rank of Petty Officer Second Class. Just prior to his discharge, plaintiff had received permanent change of station (PCS) orders to a ship homeported in San Diego, California. Because of his discharge, plaintiff did not report to duty in San Diego.

Plaintiff contested his discharge, and eventually, on June 27, 1991, the Board for Correction of Naval Records (BCNR) determined that he had been wrongfully discharged. Accordingly, the BCNR ordered the correction of plaintiff's naval records to show that he was not discharged on May 11, 1988, but continued to serve in the Navy without interruption until the expiration of his enlistment on March 3, 1991. Thus, plaintiff's term of enlistment effectively expired after approximately 16 years and 6 months of active service. As a result of the BCNR's decision, plaintiff received an honorable discharge and was entitled to $67,-

360.71 in back pay and allowances. In reimbursing plaintiff, the Defense Finance and Accounting Service (DFAS) set off $48,-737.98, the amount of civilian earnings that plaintiff had received during the period of his wrongful discharge.

During the period of plaintiff's wrongful discharge he held the following part-time employment, all in the San Diego area: (1) stock clerk and driver for the Navy Exchange, earning $5,487.66, in 1988; (2) security guard for Roger's Police, a private security patrol service, earning $1,875.59, also in 1988; (3) baker with the Fornaca Family Bakery, earning $29,376.42, in 1989; and (4) driver for Kerns Transportation Service, earning $2,835.00 in 1990 and $2,344.64 in 1991. Plaintiff alleges that about 50% of his work at the Navy Exchange, the Fornaca Family Bakery, and at Kerns Transport Service was performed during periods which would have been off-duty hours had he not been discharged. With respect to plaintiff's work at Roger's Police, plaintiff alleges that about 95% of his work there was performed during what would have been his off-duty time.

By letter dated November 7, 1996, plaintiff made a written demand to DFAS for payment of the $48,737.98 withheld by defendant. It is not clear from the present record whether plaintiff received a direct response from DFAS. However, plaintiff's congressman, Duncan Hunter, received a letter from DFAS in response to his inquiry on plaintiff's behalf The December 19, 1991 letter stated, in part:

> Earnings received from civilian employment during any period from which active duty pay and allowances are payable will be deducted from the settlement of a member's claim. This is in accordance with the procedures of the Board for Correction of Naval Records pursuant to 10 U.S.C. § 1552(sic) and several decisions of the Comptroller General of the United States, who is the final authority on the disbursement of Government funds.

In a January 6, 1997 letter from DFAS to Congressman Hunter, DFAS admitted that $6,818.67 had been erroneously deducted from plaintiff's back pay award, but otherwise rejected plaintiff's demand for the remainder of the amount offset and withheld, $41,919.31. On or about February 28, 1997, plaintiff made another written demand to DFAS for the $41,919.31. To date, the DFAS has not responded to plaintiff's demand.

Plaintiff claims that the $41,919.31 was wrongfully offset from his back pay award because he could have earned this amount moonlighting while he was on active duty. Plaintiff, however, concedes that he never moonlighted during his service on active duty with the Navy. Plaintiff seeks the principal amount of $41,919.31 plus costs, expenses, and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Defendant has moved to dismiss for failure to state a claim upon which relief can be granted.

## DISCUSSION

When reviewing the defendant's motion to dismiss pursuant to RCFC 12(b), the court "normally consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988) (citations omitted). If the motion to dismiss alleges failure to state a claim, such motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### I

It is well established that a servicemember deprived of military pay because of a wrongful separation must generally mitigate his or her damages with any income from subsequent civilian employment. *Groves v. United States*, 47 F.3d 1140, 1147 (Fed.Cir.1995); *Motto v. United States*, 175 Ct.Cl. 862, 869, 360 F.2d 643, 647 (1966). The Court of Claims in *Craft v. United States*, explained:

> The equitable condition imposed by the court in the computation of backpay awards gives recognition to the factual context wherein outside earnings would

70

not have been received had the employee been in a position to render the services to the Government and to the principle that the Government is entitled to the complete services and undivided attention of its employee during working hours. On the basis of these considerations, mitigation has been required by offset in cases where the federal employee's claim involved Government action equally as shabby as the treatment plaintiff here received. *Craft v. United States*, 218 Ct.Cl. 579, 599–600, 589 F.2d 1057 (1978).[1] Courts have recognized an exception to the general duty to mitigate when servicemembers prove that they would have received a portion of the civilian pay in question even if they had remained on active duty. *See Groves*, 47 F.3d at 1147–48; *Jackson v. United States*, 121 Ct.Cl. 405, 413–14 (1952) (disallowing the government's set off because the evidence established that the plaintiff had actually engaged in moonlighting while on active service).

██ Defendant argues that plaintiff does not fall within the narrow confines of the exception to this offset rule which exists for those servicemembers who actually engaged in off-duty employment prior to their discharge. In the instant case, it is undisputed that plaintiff never moonlighted during his 13 years 9 months of active service prior to his discharge. Therefore, defendant contends, plaintiff's complaint fails to state a claim for which relief may be granted and the court should dismiss his complaint.

Plaintiff espouses a contrary position, that is, no restrictive bright-line rule exists that a servicemember, in order to avoid a set off of civilian earnings, must allege that he in fact held a moonlighting job prior to his discharge. Plaintiff argues that the decision to impose a duty to mitigate on a particular back pay award is an equitable consideration that should be made on an *ad hoc* basis, dependent upon the particular facts of each case. Indeed, plaintiff asserts that "the Court's proper goal in this litigation is to determine whether the plaintiff *could have*

earned 'moonlighting' wages in addition to his Navy pay." (Emphasis added) To that end, plaintiff argues that a trial is necessary to allow plaintiff to prove the following facts: (1) that plaintiff would likely have had the opportunity to moonlight, had he been allowed to remain on active duty; (2) that jobs were available in the area where plaintiff would have been stationed; (3) that such jobs were compatible with plaintiff's Navy duties; and (4) that plaintiff was motivated to engage in off-duty employment. The court accepts these facts as true for purposes of this motion.

Plaintiff does not cite and the court has found no case in which the exception to the duty to mitigate was extended to a servicemember who did not actually moonlight while on active service. In *Laningham v. United States*, 5 Cl.Ct. 146 (1984), this court specifically rejected the plaintiff's argument that his "earnings should not be set off against his award because his civilian employment was performed part-time, during the evening hours, and 'could have been carried on concurrently with his active duty.'" The court rejected the plaintiff's assertions for want of proof in part because the plaintiff failed to show that he had ever performed part-time civilian employment during his nearly 20 years on active duty with the Naval Reserve. *Id.* at 158. Likewise, in *Conn v. United States*, 187 Ct.Cl. 319, 322, 407 F.2d 879, 880 (1969), the court rejected the same argument plaintiff raises here, i.e., civilian earnings should not be offset against a back pay award where the servicemember could have engaged in moonlighting had the servicemember remained on active duty. In response to the plaintiff's argument the court stated that:

Even if it is assumed, however, that this plaintiff (who was not "moonlighting" at the time of discharge) would have been so engaged at some time thereafter had he remained on active duty, there is no precedent which suggests that the well established rule of "setoff," or mitigation . . ., is vitiated thereby. The court does not have

1. The court notes that much of plaintiff's brief focuses on the Navy's allegedly shabby treatment of plaintiff. The *Craft* decision cited in the main

text plainly requires servicemembers to mitigate their damages regardless of the government's treatment of them.

before it, and does not pass upon, the case of a serviceman who was actually "moonlighting" at the time of his discharge (or shortly before).

*Id.* The situation described in the last sentence quoted above was the situation in *Groves.* In *Groves,* the Federal Circuit stated that:

> A servicemember deprived of military pay by virtue of a wrongful separation must generally mitigate his damages with any income from subsequent civilian employment. *Motto v. United States,* 360 F.2d 643, 647, 175 Ct.Cl. 862 (1966). The earnings from such outside employment must be deducted from any award of back pay if he would not have received those earnings had he remained in the service. *See Silver v. United States,* 551 F.2d 295, 297, 213 Ct.Cl. 388 (1977); *Conn v. United States,* 407 F.2d 879, 880, 187 Ct.Cl. 319 (1969). As the trial court recognized, this means that "moonlighting earnings are not subject to offset if such outside income could have been received by the servicemember prior to discharge, in addition to the military pay called for by the position occupied." Groves v. U.S., 30 Fed. Cl. 28, 37 (1993).

*Groves,* 47 F.3d at 1147 (citations omitted). The plaintiff in *Groves,* an officer in the Army Reserves, sought back pay and allowances that accrued following conviction by general court-martial that was later reversed on appellate review. In addition to Groves' full time duties as an Army doctor, Groves moonlighted as a subcontractor for medical services companies in civilian hospitals during evenings, weekends, and holidays. *Id.* at 1142–43. Pursuant to Army regulations, Groves was allowed to moonlight up to sixteen hours a week, unless his commander authorized more hours.

In *Groves* the Federal Circuit made a fact specific determination after evaluating the circumstances of the case that the money Groves earned as an emergency room physician following his release from confinement and relief from active duty would not be deducted from an award of back pay, except to extent the money exceeded payment for sixteen hours per week. The court stated that:

> the record supports the conclusion that Groves was authorized to engage in off-duty employment for up to 16 hours per week, and that *he performed* such employment as an emergency room physician *prior* to his court-martial. *On this record,* Groves' back pay award should be offset by his post-release civilian earnings only to the extent that he could not have received those earnings had he remained on active duty—that is to the extent that they exceed the 16 hours per week of *moonlighting he performed,* with the authorization of his commanding officer, while on active duty.

*Id.* at 1148 (emphasis added). Plainly, one significant factor in the court's evaluation was the fact that Groves actually performed civilian work prior to his discharge. Similarly, in *Jackson v. United States,* 121 Ct.Cl. 405, 414 (1952), the court held that the wrongfully discharged servicemember was entitled to back pay without set off because "at the time of his discharge he was *already engaged in this employment,* in addition to his duties with the defendant, and what he earned at it he earned during hours other than the hours during which the defendant had required his services as a chauffeur." (Emphasis added).

Thus, there is no recognized exception to the duty to mitigate for a servicemember who might have moonlighted had he remained on active service. If the court were to accept plaintiff's position, any servicemember, would, in hindsight, argue that they could and would have moonlighted had they not been discharged from active service. The potential for abuse is great, one could reasonably foresee many servicemembers motivated by self-interest making such a claim in an attempt to circumvent the duty to mitigate. If plaintiff's position was the standard rule, the duty to mitigate would be emasculated. Because plaintiff concedes that he did not engage in any civilian employment during his thirteen years nine months of active service, the court finds that plaintiff, on the facts of this case, has failed to state a

claim upon which relief can be granted.[2] Accordingly, plaintiff's claim must be dismissed.

## II

 Independent of plaintiff's claim for back pay, plaintiff requests leave, pursuant to RCFC 15(a), to amend his complaint to include claims for constructive reenlistment in the Navy, together with constructive military retirement and the benefits accruing thereto. Plaintiff asserts that justice requires "he should be given the opportunity to demonstrate that the BCNR was in error in failing to recommend his immediate reenlistment, which would have no doubt provided the additional 3 years and 6 months of active service he needed to qualify for a military pension." Ostensibly, plaintiff bases jurisdiction for this claim on 28 U.S.C. § 1491(a)(2) which grants this court jurisdiction in military pay cases involving the entry of a monetary judgment jurisdiction to "provide an entire remedy."

Under 15(a), "a party may amend [its] pleadings only by leave of court ... and leave shall be freely given when justice so requires." The Supreme Court established the following test for evaluating amendments to a complaint:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Plaintiff's motion to amend the complaint is futile, because the court's power to grant non-monetary relief must be inci-

dent of and collateral to the award of a money judgment. *See Bates v. United States*, 34 Fed. Cl. 51, 53 (1995) (citing *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988)). In the instant case, the court cannot enter a monetary judgment on plaintiff's claim because the court cannot grant plaintiff a constructive reenlistment. Plaintiff has been fully compensated for his previous term of enlistment which expired on March 3, 1991. Any new enlistment is clearly a military function which the court should not perform, as requested by plaintiff, on the facts of this case. It is well established that servicemembers have no right to reenlist at the expiration of their terms. *Austin v. United States*, 206 Ct.Cl. 719, 723–24, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *Dodson v. United States*, 988 F.2d 1199, 1203–04 (Fed.Cir.1993) (stating that "no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation."). As noted above, plaintiff's enlistment contract expired after approximately 16 years and 6 months of active service. Therefore, the court, as a matter of law, cannot grant plaintiff constructive reenlistment or retirement.

## CONCLUSION

For the reasons set forth above, the court concludes that plaintiff has failed to state a claim upon which relief can be granted. Accordingly, defendant's motion to dismiss is granted. Additionally, plaintiff's motion for leave to amend is denied. The clerk shall dismiss the complaint. No costs.

---

2. The court has accepted as true the facts plaintiff asserts he would prove at trial, i.e., that moonlighting was allowed as a matter of general policy; that as a petty officer, plaintiff would have had an opportunity to moonlight; that he was motivated to moonlight; and that moonlighting would not have interfered with his Navy duties. The critical fact, which plaintiff concedes is true, is that plaintiff did not moonlight during his 13 years 9 months of active service. On this record, this fact clearly trumps the facts plaintiff seeks to prove at trial. Hence, a trial would be futile. Furthermore, during oral argument, plaintiff did not dispute that the ship he was assigned to would at times be deployed at sea in which case he would have had no opportunity to moonlight. Nor did plaintiff dispute that there may have been times that he may not have had an opportunity to moonlight even while the ship was docked.